UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALFORD LEE ROSE | CIVIL ACTION |
| VERSUS | NO. 25-1943 |
| STATE OF LOUISIANA THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, *et al.* | SECTION M (5) |

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendants the State of Louisiana through the Department of Public Safety and Corrections, James LeBlanc, Travis Day, and Gary Westcott (collectively, "Defendants") seeking dismissal of all of plaintiff Alford Lee Rose's claims for failure to exhaust administrative remedies.[1] Rose, who is proceeding *pro se*, responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion because Rose failed to exhaust his administrative remedies.

## I. BACKGROUND

Rose, who is incarcerated at Rayburn Correctional Center ("RCC") and completely blind, is asserting claims against the Defendants under 42 U.S.C. § 1983 for violating his Eighth Amendment right to be free from cruel and unusual punishment, denying him equal protection of the law, violating the Americans with Disabilities Act, and failure to properly train, instruct, and supervise Defendants' employees.[3] On May 26, 2025, Rose filed an Administrative Remedy Procedure ("ARP") complaint numbered RCC-2025-359 (the "request for remedy"), which was received by the warden's office the following day.[4]

[1] R. Doc. 23.
[2] R. Doc. 26.
[3] R. Doc. 1 at 4-6.
[4] R. Doc. 23-5 at 4.

Rose's request for remedy describes events that took place on January 7, 2025, January 8, 2025, March 11, 2025, and April 8, 2025.[5] Rose alleges that on January 7, 2025, a lieutenant for RCC used excessive force while taking Rose out of the infirmary.[6] Rose alleges that on January 8, 2025, an officer verbally abused him, ordered him to undress, and would not tell him where he could find his clothes.[7] On March 11, 2025, claims Rose, he was refused medical treatment while at the infirmary after falling and injuring his right shoulder.[8] And on April 8, 2026, alleges Rose, a sergeant used excessive force when taking him to the infirmary.[9]

An ARP screening officer rejected the request for remedy on May 28, 2025, because it contained multiple complaints and because over 90 days had passed since some of the events occurred.[10] Rose acknowledged receipt of the rejection on May 29, 2025.[11] Rose never resubmitted the request for remedy but instead forwarded it to the Secretary of the Louisiana Department of Public Safety and Corrections.[12] Rose filed this suit on August 13, 2025.[13] Although he is proceeding *pro se*, his fellow inmate, Derrick Jerome Allen, has assisted him in filing pleadings.[14]

## II. PENDING MOTION

Defendants' motion for summary judgment requests that this Court dismiss with prejudice all of Rose's claims for failure to exhaust administrative remedies.[15] Defendants contend that

---

[5] *Id.* at 4-5.
[6] *Id.* at 4.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 5.
[10] R. Doc. 1-1.
[11] R. Doc. 23-5 at 3.
[12] *See* R. Docs. 1 at 3; 23-4 at 2; 26 at 3.
[13] R. Doc. 1 at 1.
[14] *See* R. Doc. 26 at 6, 10. At Rose's request, an effort was made to procure a volunteer lawyer to represent him in this matter, but ultimately no one came forward to assume the representation. *See* R. Docs. 20; 27; 47; 53; 54; 55.
[15] R. Doc. 23 at 1.

Rose's claims are "beyond the scope" of the grievances alleged in the request for remedy.[16] Further, Defendants argue that Rose failed to take any action regarding the request for remedy after receiving notice of the screening officer's rejection.[17] And Defendants assert that because the events occurred over 90 days ago, "exhaustion is no longer possible for the claims at issue in the present suit."[18]

In opposition, Rose argues that Defendants' summary-judgment motion is premature.[19] He also contends that the Court should consider his § 1983 claims because he exhausted his administrative remedies when he forwarded the request for remedy to the Secretary.[20] Further, Rose alleges that RCC's ARP system is essentially "unavailable" because it is dysfunctional and Defendants failed to follow the procedure required under the Louisiana Administrative Code.[21] Each of Rose's arguments will be addressed in turn.

## III. LAW & ANALYSIS

As noted, Rose is proceeding *pro se*. A court liberally construes a *pro se* party's filings and those filings are held "to less stringent standards than formal pleadings drafted by lawyers." *United States v. Davis*, 629 F. App'x 613, 618 (5th Cir. 2015) (quotation omitted). Nevertheless, a *pro se* plaintiff is still claiming the benefit of the courts and must adhere to its procedures and the substantive law. *See Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (observing that a *pro se* plaintiff is not "exempt ... from compliance with the relevant rules of procedural and substantive law" (quotation omitted)). "A court will squint at *pro se* filings to discern what may be there – but it will not see things that are not there." *Brown v. Brown*, 2025 WL 1811326, at *3

[16] R. Doc. 23-1 at 8.
[17] *Id.* at 9-10.
[18] *Id.* at 11.
[19] R. Doc. 26 at 2-3, 9-10.
[20] *Id.* at 3.
[21] *Id.* at 4-5.

(N.D. Tex. July 1, 2025) (citing *Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 851 (5th Cir. 2018) ("[T]here are limits on how far we will go to assist *pro se* plaintiffs.")).

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary

judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

**1. Timeliness of Defendants' Motion**

Before addressing the merits of Defendants' motion for summary judgment, the Court will take up Rose's procedural challenges to the motion. Rose first argues that a summary-judgment motion is improper at this juncture because Defendants have not yet filed an answer or a motion to dismiss.[22] Rule 56(b) provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). There is nothing in the local rules regarding the timing of summary-judgment motions, and this Court did not issue in this case an order altering in any way the commencement time for filing summary-judgment motions. That Defendants had not yet filed an answer or motion to dismiss was no impediment then to their filing the motion for summary judgment.

Rose also challenges the summary-judgment motion as premature because he asserts that further discovery is required to support his opposition to Defendants' motion.[23] But Rose's opposition "d[oes] not 'identify specific facts … that would alter the [Court's] analysis' or in any way 'demonstrate how the additional discovery would likely create a genuine dispute of material fact.'" *MDK Sociedad de Responsabilidad Limitada v. Poplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (citation modified) (quoting *Mendez v. Poitevent*, 823 F.3d 326, 337 (5th Cir. 2016)). Nor does Rose provide the affidavit or declaration required by Rule 56(d) to forestall the Court's consideration of the motion pending discovery of specific facts essential to justify his opposition. *See* Fed. R. Civ. P. 56(b) (providing that a court may defer consideration of a summary-judgment motion or deny it "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons,

[22] *Id.* at 2-3, 9-10.
[23] *Id.* at 9.

it cannot present facts essential to justify its opposition").[24] As such, the Court finds that Rose's procedural challenges fail and that Defendants' motion is timely.

**2. Exhaustion of Administrative Remedies**

Again, Defendants seek the dismissal of Rose's claims for failure to exhaust administrative remedies. However, Rose contends that he exhausted his administrative remedies when he forwarded his rejected request for remedy to the Secretary of the Louisiana Department of Public Safety and Corrections and thereafter never received a response.[25]

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoner-plaintiffs must exhaust their administrative remedies before bringing an action under § 1983, or any federal law, for injuries related to prison conditions or events. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Because exhaustion is an affirmative defense, the Defendants bear the burden to demonstrate that Rose failed to exhaust his administrative remedies. *Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016).

Courts look to the prison's grievance procedures "[t]o determine what remedies are 'available' and thus must be exhausted." *Huskey v. Jones*, 45 F.4th 827, 831 (5th Cir. 2022) (quotation omitted); *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015); *Cowart*, 837 F.3d at 451.

---

[24] Nor can Rose's pending motions to supplement the complaint (R. Docs. 32; 34) and record (R. Doc. 43) assist him on this score as the proposed amendments and exhibits do not bear upon (much less change) the chronology and content of Rose's ARP submissions.

[25] R. Doc. 26 at 3.

Louisiana's ARP grievance process, which applies to all facilities operated by the Louisiana Department of Public Safety and Corrections, La. Admin. Code tit. 22, pt. I, § 325(D)(1), is a two-step process, and "a prisoner has not exhausted his remedies until he has completed both." *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019). First, an inmate commences the "process by completing a request for administrative remedy … or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought." La. Admin. Code tit. 22, pt. I, § 325(G)(1)(a)(i). The prisoner must make the request within 90 days of the alleged circumstance or event that forms the basis for his complaint. *Id.* § 325(G)(1).

An ARP screening officer then screens the request before it is assigned to the first step and notifies the prisoner as to whether his request has been accepted or rejected. *Id.* § 325(I)(1). If the screening officer rejects the request, the prisoner must "be provided written notification of the grounds upon which the rejection is based." *Id.* § 325(I)(1)(c)(ii). The Louisiana Administrative Code provides the exclusive reasons for which the screening officer may reject the request. Relevant to the captioned matter, a request is rejected if "[t]he offender has requested a remedy for more than one incident (a multiple complaint)" or if "[t] here has been a time lapse of more than 90 days between the event and the initial request." *Id.* § 325(I)(1)(c)(i)((g)), ((i)). The prisoner "has not properly exhausted administrative remedies if his request is rejected for any of the reasons" enumerated in the Administrative Code. *Id.* § 325(I)(1)(c)(iv). The prisoner must correct the noted deficiencies and resubmit his request for remedy to the screening officer, otherwise it "will not be processed." *See id.* § 325(I)(1)(a)(ii), (c)(iii). The prisoner cannot appeal the rejection to step two until his request for remedy is accepted and processed pursuant to step one. *See id.* § 325(I)(1)(c)(iii)

Once the request is accepted, it is assigned to step one, and the warden has 40 days to respond. *Id.* § 325(I)(1), (J)(a)(ii). If the warden fails to timely respond or if the prisoner is dissatisfied with the warden's response, the prisoner may then proceed to step two by appealing the matter to the Secretary of the Louisiana Department of Public Safety and Corrections. *Id.* § 325(J)(1)(b)(i). Only after exhausting these steps may the prisoner file suit in district court if he is not satisfied with the Secretary's response or if the Secretary fails to respond within 45 days. *Id.* § 325(J)(1)(b)(iv).

Because Rose concedes that he did not follow the proper administrative procedure with respect to the incidents described in the complaint, the Court finds that Defendants have demonstrated that Rose failed to exhaust his administrative remedies, which requires the dismissal of his complaint. In both his initial complaint and opposition to the instant motion, Rose claims that following the ARP screening officer's rejection of his request for remedy, he proceeded directly to step two by forwarding the request for remedy to the Secretary.[26] And he provides no documentation or other evidence indicating that he resubmitted his request for remedy to the screening officer or warden after attempting to correct the noted deficiencies. As Stacey Rowell's affidavit attests, the Department of Public Safety and Corrections' ARP computer database does not contain any indication that he did so,[27] a fact which Rose does not contest.[28] Thus, because "the merits of his allegations were never considered under" step one, Rose did not exhaust his administrative remedies. *Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014).

---

[26] *See* R. Docs. 1 at 3; 23-4 at 2; 26 at 3.

[27] R. Doc. 23-4 at 2.

[28] Rose does challenge the admissibility of Rowell's affidavit, claiming that it contains false information because she does not mention other ARP requests he submitted. *See* R. Doc. 26 at 6. But he does not claim those other requests were for the same incident. Thus, because Rowell's affidavit and the captioned matter are limited to the handling of Rose's May 2025 request for remedy and does not purport to address other incidents, his challenge to the affidavit fails. *See* R. Docs. 1 at 3; 23-4 at 2; 26 at 3.

Rose's complaint and opposition, which are corroborated by Rowell's affidavit, "demonstrate that there is no genuine issue of material fact as to whether [Rose] exhausted his administrative remedies." *See Wilson*, 776 F.3d at 302. Although Rose may have thought he was following the proper procedure, the Fifth Circuit is clear that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. … Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Since Rose concedes that he has not exhausted administrative remedies with respect to the alleged incidents described in the complaint, dismissal of the case is not only appropriate but mandated.

**3. Availability of Administrative Remedies**

Rose also contends that the ARP system does not qualify as an "available" remedy[29] because prison officials failed to follow the ARP procedure,[30] including the failure to timely respond to other ARP requests.[31] He supports this assertion by providing documentation and a Louisiana court of appeal decision relating to ARP requests filed by his fellow inmate Derrick Jerome Allen.[32]

The Supreme Court has held that a prisoner only needs to exhaust "available" remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy is "available" if its "procedures … are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). But a prisoner has no obligation to exhaust "unavailable" remedies. *Id.* A remedy is "unavailable" when "(1) prison officials are unable or consistently unwilling to provide any relief to aggrieved inmates, (2) the administrative scheme is so opaque that it becomes,

---

[29] *See* R. Doc. 26 at 4, 7-8.
[30] *Id.* at 5.
[31] *Id.* at 4, 6.
[32] *Id.* at 4-5 (referencing R. Docs. 26-2; 26-3).

practically speaking, incapable of use by an ordinary prisoner, or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Huskey*, 45 F.4th at 831 (quoting *Hinton v. Martin*, 742 F. App'x 14, 15 (5th Cir. 2018)); *Ross*, 578 U.S. at 643-44.[33]

The Court finds that Rose had access to an available remedy because prison officials promptly and efficiently handled his request for remedy. The ARP process does not set a deadline for when inmates receive their response from the screening officer, but "[t]he screening process should not unreasonably restrain the offender's opportunity to seek a remedy." La. Admin. Code tit. 22, pt. I, § 325(I)(1). Rose drafted (and presumably submitted) his request for remedy on May 26, 2025, and within three days received written notice of, and the reasons for, its rejection,[34] giving him ample opportunity to address the noted deficiencies and resubmit the request for remedy as to any complained-of incidents that were not yet stale.

Rose's use of Allen's documentation is immaterial to the disposition of this matter. The manner through which RCC officials processed another inmate's ARP requests for remedy is irrelevant to whether the officials properly handled Rose's request for remedy in this matter. Because Defendants promptly and efficiently processed Rose's request for remedy in compliance with the applicable provisions of the Administrative Code, he had access to "available" administrative remedies. He simply failed to exhaust them.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

---

[33] Because Rose does not claim, or present facts demonstrating, that Louisiana's APR process is "incapable of use," *Ross*, 578 U.S. at 643, or that administrators prevented him from taking advantage of the process, these three circumstances are not relevant to this case.

[34] R. Doc. 23-5 at 3-4.

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 23) is GRANTED.[35]

New Orleans, Louisiana, this 8th day of September, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

[35] Rose asserts the same claims against another defendant, Medical Director over Rayburn Correctional Center, who has not joined Defendants' motion but did file a motion to dismiss for failure to state a claim. R. Doc. 28. Courts have discretion to extend dismissal to similarly situated nonmoving defendants when the same legal deficiency applies to all defendants and the plaintiff has had an opportunity to respond to the motion seeking dismissal (in this instance, Defendants' motion for summary judgment). *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) (affirming the district court's *sua sponte* dismissal of "defendants who did not join the motion to dismiss … because the plaintiffs ma[d]e the same allegations against all defendants"); Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may … grant summary judgment for a nonmovant."). Therefore,

IT IS FURTHER ORDERED that summary judgment is also GRANTED in favor of Medical Director as to all of Rose's claims.